Haight, J.
The return of the respondents is in substance as follows: That on or before the 12th day of September, 1885, application was duly made to the commissioner of highways of the town of Cohocton, to lay out a road in said town, which was particularly described in the application signed by Darwin Marsh and eight others, all of whom were persons hable to be assessed for highway labor in said town; notice was in due form of law given to the town clerk and highway commissioner for the drawing of a jury *174 of twelve freeholders to examine the grounds through which the highway was proposed to be laid, the jury to be drawn on the 12th day of September, 1885, at ten o’clock A. M., at the office of the town clerk; that the notices were in due form regularly served and posted according to law; that on- the day and at the time and place named in the notices, the town clerk, commissioner of highways and F. C Fowler, one of the justices of the peace of the town, appeared and then and there proceeded to draw the jury; that the relator David Cronk, then and there appeared by John P. Cronk, his agent; that the town clerk proceeded to draw such jury in the presence of the commissioner of highways and justice of the peace, and after the names of two or three jurors had been drawn without objection, the name of Eleazor Bently was drawn, and one of the applicants Darwin Marsh, objected because Bently had been an opposing candidate against him for office in the previous year and he had understood that Bently had said he would oppose him in anything he wanted and Marsh objected to Bently’s serving on the jury on that account; that John P. Cronk ■ made no objections to his being put aside, and another juror was drawn in his place; soon afterwards, the name of Harrison Briglin was drawn and John P. Cronk objected to him, and Briglin was put aside because he was one of the applicants for the road; that the name of James A. Chatman was then drawn as a juror and he was objected to by Mr. Bice Moulton, who owns part of the land tnrough which the proposed road is laid, on the ground that Chatman was one of the applicants for the road, and his name was put aside; that Cyrus Stone was then drawn as a juror and objection was made to him by some one, but by whom the respondents cannot remember, that he was not a freeholder, and his name was put aside. They further return that at the drawing of the jury it was mutually agreed between the applicants and David Cronk, by John P. Cronk, that no one should be allowed to act as a juror that was not satisfactory to both parties; that the jury was so drawn by consent of the applicants and the relator in the manner herein-before stated. They further return that, in pursuance of a summons, the jurors appeared at the time and place therein mentioned, together with the highway commissioner and F. C. Fowler, a justice of the peace, and that David Cronk appeared, and before swearing the jury, the justice announced that if any one had any objection to the-jury, or any of them, or their proceeding to view the proposed road, it should there be made known, and no objection was made to the jury, or any of them, whereupon the jurors were then and there sworn, and then proceeded to-an examination of the proposed road. That after examin *175 ing the proposed route of the highway, three successive ballots were taken by the jurors, each of which resulted In five votes against the proposed road and seven in favor of it; thereupon one of the jurors, Hiram Rynders, proposed that they should adjourn and make an examination of the county line and Pine Hill road, and meet at Van Piper’s hotel afterwards, pursuant to adjournment. It was at that time about two o’clock in the afternoon, and the jurors had. had no dinner. They had come to the place of meeting on foot and were about four miles distant from any hotel The jurors were then invited to take dinner at the house of Marsh and did so, and immediately after dinner started to view the county line and Pine Hill road, and by agreement afterwards convened at Van Piper’s hotel where they unanimously voted that the proposed new road was necessary, and thereupon duly signed a certificate to that effect; they further returned that there was no discussion about the proposed road while dining at the house of Marsh, and that after the jurors had finished their dinner some of them offered to pay for the same, but whether or not the same was paid for by any of them the respondents are unable to return; they further return that David Cronk, by JohnP, Cronk, was during all of the time present with the jurors— from the- time when they were swo.rn to the time of their final decision, except while they were deliberating and balloting; they further return that David Cronk is not aggrieved by the decision; that he has no interest therein; that the lands claimed by him are owned by JohnP. Cronk; that all of the matters in respect to the drawing of the jury and the subsequent proceedings up to the time of the final decision were, in all respects, done with the approval and •consent of all of said relator and applicants.
Several of the questions raised were recently considered by us in the case of The People, etc., ex rel. Downey v_ Dains (38 Hun, 43), and we do not deem a further discussion of them necessary; but the return is conclusive as to the facts and can not be contradicted. If it is defective, the court may direct a further return; if it is false, the relator’s remedy is by action. Haines v. Judges of Westchester, 20 Wend., 625; Wood on Mandamus and Certiorari, 202; Code, § 2135.
The respondents have returned as a fact that the relator, David Cronk, appeared by John P. Cronk, his agent; that at the drawing of the jury it was mutually agreed between, the applicants and the relator, that no one should foe allowed to act as a juror that was not satisfactory to both, parties; that the jury was so drawn by consent of the applicants and the relator. If so, then we fail to see why the *176 relator is not estopped from now raising the question of irregularity, or why he has not waived his right so to do.
As we have seen, the respondents have also returned that all of the proceedings of the jury up to the time of the final decision were in all respects done with the approval and consent of the relator; if so, their dining at the house of Marsh was with his approval and consent, and for the same reason he would hoav be estopped from raising any question in reference to their conduct in so doing, or be deemed to have waived the irregularity, if any.
But again, proceedings of this character are never conducted with the same formality or strictness as in the trial of actions. The jury in this case had to travel on foot a long distance to view the lands through which the highway was proposed; they were four miles distant from any hotel. It was two o’clock in the afternoon, and they had had no dinner. Tiie invitation appears to have been general, made in the presence of the relator and other parties interested. No discussion took place at the dinner table in reference to the proposed highway. There is no evidence of any improper motive on the part of Marsh in giving the invitation, or that any prejudice resulted to the relator in consequence thereof, and consequently we do not think that the proceeding -should be annulled for this reason. Gale v. N. Y. C. and H. H. R. Co., 13 Hun, 1.
But again, as w.e have seen the respondents have returned that the relator is not aggrieved; that he is not the owner of the lands; that they are owned by John P. Oronk. If so, he has no standing in court.
The proceeding should .be confirmed and the writ dismissed with fifty dollars costs.
Bradley and Childs, JJ., concur.